**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **HUTCHESON MEDICAL CENTER, INC.,** | ) | **PROPOSED** |
| **et al.,** | ) | **Jointly Administered Under** |
| | ) | **CASE NO. 14-42863-pwb** |
| Debtors. | ) | |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL
AND REQUEST FOR EMERGENCY HEARING**

COME NOW Hutcheson Medical Center, Inc., ("**Hutcheson**") and Hutcheson Medical

Division, Inc., ("**HMD**"), debtors and debtors-in-possession (collectively, the "**Debtors**") in the

above-styled proposed jointly administered case (the "**Case**"), pursuant to 11 U.S.C. § 363 and

Bankruptcy Rule 4001, and files this Motion for Authority to Use Cash Collateral and Request

for Emergency Hearing (the "**Motion**") seeking entry of an order authorizing the Debtors to use

cash collateral.  In support of the Motion, the Debtors show the Court as follows.

**Jurisdiction and Venue**

1.

This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2.

On November 20, 2014, (the "**Petition Date**"), the Debtors each filed a voluntary petition

for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The

Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections

1107 and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no committee has been appointed in this Case.

3.

The Debtors provide health care services to the residents of Catoosa, Walker, and Dade counties through traditional hospital, outpatient clinic and nursing care facilities. An integral part of the Northwest Georgia community, Hutcheson is one of the largest employers in the tri-county area. The hospital plays a vital economic role in the community, providing over 800 jobs and an outstanding quality of life for its employees. More than 200 of the area's finest physicians with privileges at Hutcheson, along with experienced registered nurses and highly trained clinical staff, provide compassionate, cost-effective healthcare to the community.

4.

Regions Bank ("**Regions**") made certain loans to the Debtors pre-petition.  In connection therewith, Regions may assert liens and security interests in some or all of the Debtors' personal property (the "**Property**"), including but not limited to, accounts, inventory, furniture, fixtures and equipment, and general intangibles. Regions may also assert that the proceeds received from the Property consisting of accounts receivable is "cash collateral" as defined in 11 U.S.C. § 363(a).

**<u>Relief Requested</u>**

5.

The Debtors have negotiated terms of a proposed Interim Order Granting Authority to Use Cash Collateral (as such may be revised prior to any hearing on the Motion, the "**Interim Order**"), a copy of which is attached hereto as Exhibit 1 (and a proposed budget is attached as

Exhibit A thereto).  The parties are continuing to review the proposed Interim Order and it remains subject to revision until entry.

6.

The Debtors' use of cash collateral is essential to the continued operation of their business, to maintain the value of the Property and for an effective reorganization.  Therefore, the use of cash collateral is in the best interest of the Debtors, their estates and their creditors.

WHEREFORE, the Debtors request that this Court: (a) schedule an emergency hearing on this Motion to be heard as soon as possible; (b) enter the proposed Interim Order granting this Motion at the conclusion of such hearing; (c) schedule a final hearing on the Motion, and (d) grant the Debtors such other and further relief as is just and proper.

This 20th day of November, 2014.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

/s/ J. Robert Williamson
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559

*Counsel for the Debtors*

1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
T:      (404) 893-3880
F:      (404) 893-3886
E:      rwilliamson@swlawfirm.com
         aray@swlawfirm.com

**EXHIBIT "1"**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **HUTCHESON MEDICAL CENTER, INC.,** | ) | **PROPOSED** |
| **et al.,** | ) | **Jointly Administered Under** |
| | ) | **CASE NO. 14-42863-pwb** |
| Debtors. | ) | |

## INTERIM ORDER GRANTING MOTION FOR
## AUTHORITY TO USE CASH COLLATERAL

THIS CAUSE came before the Court at a preliminary hearing at ___ p.m. on November ___, 2014 (the "**Preliminary Hearing**"), to consider the Motion for Authority To Use Cash Collateral And Request For Emergency Hearing, [Docket No. ___] (the "**Motion**") filed on November ___, 2014, by Hutcheson Medical Center, Inc. and ("**HMC**"), Hutcheson Medical Division, Inc. ("**HMD**"), debtors and debtors-in-possession (collectively, the "**Debtors**") in these chapter 11 cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363 and 507(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, and 6004 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking the entry of an order granting, *inter alia*, the following relief:

a.      Authorization under section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 for the Debtors to use as cash collateral (as defined in Section 363(a) of the Bankruptcy Code) the proceeds and any revenues from the Prepetition Collateral (as defined below) (the "**Cash Collateral**") that the Debtors are holding or may obtain for general working capital purposes and general corporate purposes relating to the postpetition operations in accordance with the terms of the Debtors' proposed budget (the "**Budget**"), a copy of which is annexed hereto as **Exhibit A**;

b.      Authorization for the Debtors to perform such other acts as may be necessary pursuant to the provisions of this Interim Order and any final order granting the foregoing relief and such other relief as provided herein and in such final order (the "**Final Order**"; and together with the Interim Order, the "**Cash Collateral Orders**");

c.      Authorization for the Debtors to continue to use the Cash Collateral of Regions Bank ("**Regions**") in accordance with the provisions of this Interim Order;

d.      Authorization for the Debtors to use the proceeds of Regions' collateral in accordance with the Budget;

e.      Authorization for the Debtors to provide adequate protection to Regions pursuant to the terms of this Interim Order based upon the use of its Cash Collateral;

f.      To vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of this Interim Order; and

g.    To waive any applicable stay as provided in the Bankruptcy Rules and provide for the immediate effectiveness of this Interim Order.

The Debtors having requested in the Motion that pending a final hearing on the Motion (the "**Final Hearing**"); and the granting of adequate protection to Regions on an interim basis; and upon finding that notice of the Preliminary Hearing was given, where possible, to: (a) United States Trustee; (b) the Debtors' material prepetition and postpetition secured lenders or any agent therefor; (c) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) the United States Trustee; (d) the County Attorneys for Walker, Dade and Catoosa Counties (the "**Counties**"); (e) The Hospital Authority of Walker, Dade, and Catoosa Counties (the "**Authority**"), and (f) all parties known by the Debtors claiming to have liens on or security interests in any of the Debtors' property; and (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), in accordance with Bankruptcy Rules 2002, and 4001(b), (c) and (d); and upon finding that this Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334; and upon finding that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Preliminary Hearing to consider the Motion on an interim basis having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief is fair and reasonable and in the best interest of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and good and sufficient cause appearing therefor, it is hereby found:[a]

---

[a] To the extent any portion of these findings constitutes a ruling of law, such portion shall constitute this Court's ruling with respect to the matters so-stated.

A.    *Petition Date*.  On November 20, 2014 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "**Court**"), thereby commencing these Cases.

A.    *Debtors In Possession*.  Each of the Debtors is continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these Cases. HMC operates the 179-bed hospital (the "**Hospital**") and related ancillary facilities, including, without limitation, a skilled nursing home and an ambulatory surgery center, located in Ft. Oglethorpe, Georgia, known as Hutcheson Medical Center (collectively, the "**Medical Center**"). The Medical Center is a vital part of the Northwest Georgia community, including the Counties"), employing in excess of 800 individuals and providing an important resource by serving the healthcare needs of the residents of the community. HPC helps operate a number of clinics affiliated with the Medical Center, and thereby assists HMC in fulfilling its mission to make available high quality health care to the residents of the Counties.    More than 200 of the area's finest physicians with privileges at the Medical Center, along with experienced registered nurses and highly trained clinical staff, provide compassionate, cost-effective healthcare to the community.

i.    *Real Property*.  HMC leases certain of the land and buildings that comprise the Medical Center, including, without limitation, the land and buildings on which the Hospital and the skilled nursing home are located (the "**Subject Property**"), pursuant to that long term Lease (as amended and modified from time to time, the "**Lease**"), dated as of January 24, 1995, between HMC and the Authority.  The Authority owns the Subject Property.  The

Subject Property is critical to HMC's continued operation of the Medical Center. HMC owns the ambulatory surgery center (the "**Surgery Center**"), located on Battlefield Parkway, Ft. Oglethorpe, Georgia, which is part of the Medical Center.

   ii. *Personal Property*. The Debtors have receivables and or payment rights from Medicare, Medicaid, and other payors for healthcare services provided (collectively, the "**Receivables**"). The total outstanding balance of the Receivables on the Debtors' books exceeds $70 million, while the estimated balance owed on "current" Receivables exceeds $12 million. In addition, the Debtors owns other valuable personal property assets, including, without limitation, cash on hand, furniture, fixtures, equipment, inventory, intellectual property and various causes of action.

   B. *Committee*. No official committee of unsecured creditors (the "**Committee**") has been appointed in these cases at this time.

   B. *Jurisdiction*. This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

   C. *Notice*. Notice of the Motion, the relief requested in the Motion, and the Preliminary Hearing was served by the Debtors on the Notice Parties. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested in the Motion, and the Preliminary Hearing: (i) was, in the Debtors' good faith belief, the best available under the circumstances; (ii) constitutes due and sufficient notice thereof; and (iii) complies with Bankruptcy Rules 4001(b) and 4001(c). No further notice of the relief sought at the Preliminary Hearing is necessary or required.

D.     *Prepetition Secured Debt*.  Subject to the provisions of this Interim Order, the Debtors acknowledge and stipulate that the following prepetition secured obligations (as set forth more fully in the Motion) are asserted by Regions against the Debtors:

      i.     *Regions Prepetition Secured Debt:*

      a.     Prior to the Petition Date, HMC and Regions entered into, or caused the entry, of those certain "**Financing Documents**" listed on **Exhibit B** hereto and incorporated herein by reference.   To secure their obligations to Regions under the Financing Documents, HMC has granted Regions a first priority lien on and security interest in and to all of their rights, title and interests in and to the following property (the "**Prepetition Collateral**"): (i) real property compromising the Surgery Center; and (ii) all of HMC's respective personal property, both tangible and intangible, including, without limitation, the following property: certificates of need and licenses for any and all facilities owned and/or operated by HMC to the extent permitted by law; furniture, fixtures and equipment (that are not leased from an unrelated third party); deposit accounts (including the Collateral Proceeds Account (as defined in the Forbearance Agreement)); inventory; intellectual property; contracts and leases; general intangibles (including enterprise value); all other tangible and intangible property, including the Receivables, and the cash proceeds of the foregoing.

      b.     As of the Petition Date, Regions asserts that the amounts due and owing under the Financing Documents exceed $26,000,000.00 (the "**Regions Claim**"), including principal, interest, attorneys' fees and other charges allowed under the Financing Documents.

E.     *Findings Regarding the Use of the Cash Collateral*.

      i.     *Good Cause*. Good cause has been shown for the entry of this Interim Order.

ii.        *Immediate Need.* The Debtors require the immediate interim use of Cash Collateral to operate their business and maximize their prospects for a successful reorganization. The access of the Debtors to sufficient working capital and liquidity through the use of the Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors. Absent the interim use of the Cash Collateral, the Debtors will not have sufficient sources of working capital to continue as a community based, acute care provider of essential medical services and maintain the value of their assets. The ability of the Debtors to pay their medical staff and other employees, provide critical patient care, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability. Unless the Debtors are authorized to use Cash Collateral on an interim basis as provided in this Interim Order pending a final hearing on the Motion, the Debtors and their estates will suffer immediate and irreparable harm.

iii.        *Fair and Reasonable Terms.* The terms of the use of the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

iv.        *Irreparable Harm.* The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. The Debtors assert that it is in the best interest of each of their respective bankruptcy estates and their creditors that the Debtors be permitted to use Cash Collateral in the manner provided for herein.

F.      *Findings Regarding the Need for Adequate Protection*.

      i.      The Debtors have requested the use of Regions' Cash Collateral. Regions does not consent to the use of its Cash Collateral except upon the terms and conditions of this Interim Order.

      ii.      The Debtors wish to provide adequate protection of the liens and security interests of Regions as set forth in this Interim Order. Adequate Protection. In consideration for the Debtor' use of Cash Collateral, Regions shall be entitled to receive adequate protection, as set forth in this Interim Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code for any diminution in the value of its interest in the Prepetition Collateral resulting from, among other things, the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "**Diminution in Value**").

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**, as follows:

1.      **Objections Overruled**. All objections to the entry of this Interim Order are hereby overruled to the extent they have not otherwise been resolved or withdrawn.

2.      **Authorization to Use of Cash Collateral**.

      (a)      Subject to the terms and conditions contained herein, the Debtors are authorized to use Cash Collateral through the earlier of (i) December 31, 2014, (ii) the occurrence of a Cash Collateral Termination Event (as defined below), and (iii) the entry of a final order authorizing the use of Cash Collateral (the "**Usage Period**"); provided, however, that such use of Cash Collateral shall only be authorized for the actual and necessary expenses of

operating the Debtors' business during the Usage Period as set forth in the Budget, which Budget shall be in form and substance acceptable to and approved by Regions in its sole discretion and shall only be amended or modified with prior written consent of Regions.

(b)    Unless otherwise authorized by the Court, the amount of Cash Collateral which the Debtors may use during the Usage Period shall not exceed in aggregate 115% of each line item, and 110% of total expenditures, set forth in the Budget; provided, however, that in addition to items set forth in the Budget, the Debtors shall be permitted to pay the actual expenses incurred for utility deposits and fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930 (the "**U.S. Trustee Fees**"). In the event the Usage Period terminates in the middle of a week, the amount budgeted for that week shall be prorated accordingly.

(c)    Notwithstanding anything in this Interim Order to the contrary, Cash Collateral shall not include: (i) any cash, securities or funds on deposit with or held by Regions that are not operating revenues, including any funds securing the Letters of Credit (as defined in Exhibit B); or (ii) proceeds of any lease, sublease license or sale outside the ordinary course of business of any of the Debtors' assets (together, the "**Extraordinary Proceeds**"). Nothing in this Interim Order or any subsequent order concerning the extension of debtor in possession financing to the Debtors or the use of cash collateral by the Debtors shall entitle the Debtors to use any portion of the Prepetition Collateral, except as expressly authorized herein, and no lien or other interest may be granted in the Regions Collateral to any third party including but not limited to any debtor in possession lender without Regions' prior written consent.

3. **Adequate Protection**.

(a) <u>Adequate Protection Provided to Regions</u>. Regions is entitled to receive adequate protection on account of its interests in the Prepetition Collateral pursuant to sections 361 and 363 of the Bankruptcy Code.

i. *Replacement Lien.* In consideration for the use of the Cash Collateral by the Debtors on and after the Petition Date, Regions is hereby granted a valid, perfected and enforceable continuing replacement lien and security interest (the **"Replacement Lien"**), equivalent to a lien granted under section 364(c) of the Bankruptcy Code, in and upon all assets of the Debtors existing on or after the Petition Date of the same nature and type as the collateral securing the Regions Claim, including, without limitation, all of the Debtors' accounts receivable, contract rights, inventory, machinery and equipment, licenses, general intangibles, and such other collateral in which Regions had an interest prior to the initiation of these Cases, whether such property was owned on the Petition Date or thereafter created, acquired or arising, and improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing, specifically including any proceeds of the foregoing deposited in bank accounts opened prepetition by the Debtors, the accounts opened by the Debtor after the Petition Date and the accounts themselves, subject and junior only to the U.S. Trustee Fees, to the same extent, validity, perfection, enforceability and priority of the liens and security interests of Regions in such collateral as of the Petition Date. Notwithstanding anything to the contrary herein, the Replacement Lien shall not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to sections 544, 547, 548, 549 or 550 of the Bankruptcy Code (**"Avoidance Actions"**).

ii.        *Supplemental Lien.*  As additional adequate protection, and solely to the extent of any Diminution Value of the Debtors' use of Regions' Cash Collateral, Regions is hereby granted a valid, perfected and enforceable continuing supplemental lien and security interest (the "**Supplemental Lien**") in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof inclusive of all causes of action of any kind or nature (excluding the Avoidance Actions and the proceeds thereof), subject only to prior valid and perfected liens existing as of the Petition Date and the U.S. Trustee Fees.

iii.        *Treatment of the Adequate Protection Lien.*  Each of the Replacement Lien and Supplemental Lien (together, the "**Adequate Protection Liens**") shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

iv.        *Additional Liens.*  The assets subject to the Adequate Protection Liens (the "**Post-Petition Collateral**") shall be in addition to all other rights of Regions under the Financing Documents, including its liens and security interests in the Prepetition Collateral. The Adequate Protection Liens shall not be: (A) subject or subordinate to (1) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (2) any liens arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other

government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is *in rem*, *in personam*, or both, except a tax of a kind specified in section 507(a)(8) of the Bankruptcy Code, or (3) any intercompany or affiliate liens of the Debtors; or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

           v.        *Financial Information.*  As additional adequate protection of Regions' security interests in the Cash Collateral, the Debtors shall allow Regions reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct reviews, appraisals, analyses and/or audits of the Prepetition Collateral, the Post-Petition Collateral, and the Debtors' books and records, and shall otherwise reasonably cooperate in providing any other financial information requested by Regions. The Debtors shall furnish such other reports and information as may be reasonably requested from time to time by Regions, all such reports to be certified by the Debtors' chief financial officer or chief executive officer. From and after the entry of this Interim Order, the Debtors shall provide to Regions on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtors' chief executive officer (or designee) and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 5% and at least $10,000 from the expenditures and receipts in the Budget. Regions shall have independent access to the Debtors' financial advisor and investment banker to discuss matters relating to the Cases.

vi.        *Reduction or Invalidation of Post-Petition Collateral.*  In the event any of Regions' security interests in or liens upon the Debtors' assets is reduced or invalidated by order of this Court, then its security interests in and liens upon the Post-Petition Collateral granted by this Interim Order shall be reduced or invalidated commensurately.

4.        **Deposits of Cash Collateral**.  All Cash Collateral shall be deposited in Debtors' Debtor-in-Possession account(s) to be established in accordance with the U. S. Trustee guidelines, except as otherwise approved by the U. S. Trustee or order of the Court.

5.        **Accounting**.  The Debtors shall at all times (a) sequester, segregate and account for all Cash Collateral that comes into their possession, custody or control, (b) keep and provide upon request records reasonably sufficient for Regions to determine the status of Cash Collateral collections and expenditures, and (c) shall provide to Regions copies of the monthly operating reports filed with this Court and with the Office of the United States Trustee

6.        **Deemed Request for Stay Relief**.  This Interim Order shall be deemed to constitute a request by Regions for relief from the automatic stay with respect to the Prepetition Collateral and for adequate protection for the use of the Cash Collateral as of the Petition Date.

7.        **Modification of Automatic Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens; (b) permit the Debtors to perform such other acts as are necessary to effectuate the terms of this Interim Order; and (c) the exercise of remedies by Regions to the extent permitted by this Interim Order.

8.        **Perfection of Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens

without the necessity of filing or recording any financing statement, mortgage, notice of lien or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle Regions to the priorities granted herein.  Notwithstanding the foregoing, Regions is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable nonbankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to Regions all such financing statements, mortgages, notices and other documents as Regions may reasonably request.  Regions, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act (or similar statue or common law) or subject to any defense reduction, setoff, recoupment or counterclaim.

9.     **Insurance**.  Debtors shall insure their property, including the Prepetition and Post-Petition Collateral against all risks to which it is exposed, including loss, damage, fire, theft

and all other such risks, in an amount not less than the fair market value of such collateral, with such companies, under such policies and in such form as is appropriate for a business of a type similar to the Debtors using sound business judgment.

10.    **Failure of Adequate Protection**.    The terms and conditions of this Interim Order are intended to provide Regions with adequate protection for its interest in property of the Debtors.    Nothing herein shall be construed as an admission by Regions that its interest in property of the Debtors, including Cash Collateral, is adequately protected.

11.    **Termination of Use of Cash Collateral**.

(a)    The Debtors' authority to use Cash Collateral pursuant to the terms of this Interim Order will terminate without any further action by the Bankruptcy Court seven (7) days after written notification sent by Regions to the Debtors, the Committee, if any, and the U.S. Trustee of the occurrence of any of the following (each a "**Cash Collateral Termination Event**"):

(i)    the incurrence by the Debtors of administrative expenses or any other amounts, of a type not set forth in the Budget, subject to any authorized variances;

(ii)    payment of claims or amounts or at the times not set forth in the Budget;

(iii)    the failure of the Debtors to timely pay all U.S. Trustee Fees;

(iv)    any of the Cases are dismissed or converted to a proceeding under chapter 7 of the Bankruptcy Code;

(v)    the earlier of (a) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code); or (b) the date the Debtors file a motion, application or other pleading consenting to or acquiescing in any such appointment;

      (vi)    the closing of a sale of all or substantially all of the Debtors' assets;

      (vii)   the Court suspends the Cases under section 305 of the Bankruptcy Code;

      (viii)  the Debtors fail to comply with, keep, observe or perform any of their agreements or undertakings under this Interim Order;

      (x)    entry of an order confirming a plan in the Cases;

      (xi)   this Interim Order becomes stayed, reversed, vacated, amended, suspended or otherwise modified in any respect without the prior written consent of Regions;

      (xii)   an adversary proceeding or contested matter is commenced by the Debtors, or any other person or entity, challenging the validity, extent, enforceability, priority or extent of the Regions' liens or claims; and

      (xiii)  imposition of orders, penalties or fines by any governmental agency or unit which does or could, if not cured promptly, result in the cessation of operations of the Debtors.

      (b)    *Rights Upon Termination Event.* Upon the expiration of such seven (7) day period, the automatic stay shall be lifted with respect to the Post-Petition Collateral and the Prepetition Collateral for the benefit of Regions to allow Regions to exercise all of its available rights and remedies against the Prepetition Collateral and Post-Petition Collateral under the Financing Documents and applicable law.

      (c)    *Termination Without Notice and Right of Temporary Use of Cash Collateral.* In addition to the Cash Collateral Termination Events above, in the event a final order authorizing the use of the Cash Collateral has not entered on or before December 31, 2014, in form and substance acceptable to Regions, the Debtors' authority to use the Cash Collateral shall automatically terminate without notice or rights of the Debtors for temporary use thereof.

12.    **Unauthorized Use of Cash Collateral**.  Notwithstanding anything herein to the contrary, no proceeds of Cash Collateral or proceeds of Prepetition or Post-Petition Collateral shall be used for the purpose of: (a) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Prepetition Collateral, the Post-Petition Collateral, the Regions Claim or any liens or security interests with respect thereto, or any other rights or interests of Regions therein; (b) asserting any claims, defenses or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against Regions, including with respect to payments made pursuant to the Financing Documents; (c) asserting any other claims, defenses or causes of action against Regions or its respective agents, affiliates, subsidiaries, directors, office, representatives, attorneys or advisors; (d) preventing, hindering or otherwise delaying Regions' assertion, enforcement or realization on the Prepetition Collateral or Post-Petition Collateral; (e) seeking to modify any of the rights granted to Regions hereunder; (f) paying any amounts not otherwise provided for in the Budget; (g) invalidating, setting aside, avoiding or subordinating, in whole or part, any of Regions' liens on any Prepetition Collateral or Post-Petition Collateral; or (h) modifying Regions' rights hereunder.  Notwithstanding the foregoing, proceeds of Cash Collateral may be used for reviewing applicable filings, documents and other papers and information necessary to evaluate the asserted validity, amount, extent, perfection, priority, or enforceability of the Prepetition Collateral, the Post-Petition Collateral, the Regions Claim or any liens or security interests with respect thereto, or any other rights or interests of Regions therein, and the existence of any defenses thereto.  Should the Debtors use Cash Collateral for any purpose not authorized herein, the security interest and lien of Regions granted hereunder shall automatically attach to any assets acquired with such Cash Collateral.

13. **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

14. **No Deemed Control**.  Regions shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of Debtors, notwithstanding its consent to this Interim Order and extending financial accommodations of any type, kind or nature under this Interim Order.

15. **Rights Preserved**.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Debtors, any Committee appointed by this Court and Regions are preserved.  Further, Regions reserves all rights to request additional adequate protection, including, without limitation, (a) a limitation of the Debtors' right to surcharge against the Prepetition Collateral, pursuant to section 506(c) of the Bankruptcy Code, (b) a release and waiver of claims against Regions, (c) a limitation of the Debtors' and Committee's rights to challenge the validity, amount, perfection, priority, extent or enforceability of the Regions Claim or the pre-petition security interests of Regions; (d) a requirement that the Debtors meet certain bankruptcy related milestones related, *inter alia*, to the sale of their assets and confirmation of plan of reorganization, and (e) such other adequate protection that Regions deems required under the circumstances.

16. **No Waiver by Failure to Seek Relief**.  The failure of Regions to seek relief or otherwise exercise its rights and remedies under this Interim Order, applicable prepetition claims

or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Regions, including Regions' right to assert at some later time that its liens and security interests in the Prepetition Collateral are not being adequately protected within the meaning of section 361 of the Bankruptcy Code.

17.    **Binding Effect of Interim Order**.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors and Regions, all other creditors of any of the Debtors or any Committee appointed by this Court in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

18.    **No Competing Liens**.  Except as set forth in this Interim Order, the Debtors shall not grant liens on, or security interests in the Prepetition Collateral or the Post-Petition Collateral to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise, that are senior to or *pari passu* with Regions without its prior written.

19.    **Restriction on Borrowing or Sale**.   Unless otherwise authorized by order of the Court following notice to Regions and such other parties as may be required by the Bankruptcy Code or the Court, Debtors shall not obtain any post-petition financing or sell or lease any of their assets, except in the ordinary course of business.

20.    **No Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of Regions, to the extent such amendment, modification or extension affects the use of the Cash Collateral, the adequate protection provided to Regions, or the rights and claims of

Regions under this Interim Order; and, no such consent shall be implied by any other action, inaction or acquiescence of Regions.

21.    **Survival**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) to the extent authorized by law, dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to Regions pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order. If any provision of this Interim Order is hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity or authority of the Debtors' use of Cash Collateral under this Interim Order prior to such time, nor shall it affect the validity, priority or enforceability of the security interests and liens granted to Regions for such use, prior to the effective date of such modification, vacation or stay.

22.    **Enforceability**.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  To the extent necessary, findings of fact shall be deemed conclusions of law, and conclusions of law shall be deemed findings of fact.

23.     **Final Hearing; Notice of Final Hearing**.  Upon execution of this Interim Order and pursuant to Bankruptcy Rule 4001(d), the Debtors shall serve a copy of this Interim Order by first class mail on all creditors on the Notice Parties and all other interested parties requesting notice.  All interested parties are hereby given notice by service of this Interim Order of the effective date of this Interim Order.  Any objection to this Interim Order must be filed with the Court and served on or before _____, **2014**, upon counsel for (a) the Debtor, J. Robert Williamson, Scroggins & Williamson, 1500 Candler Building, 127 Peachtree Street, N.E., Atlanta, Georgia 30303, and (b) Regions, (i) Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, TN 37219, Attention David Lemke, Esq. and Robert P. Sweeter, Esq. and (ii) Burr & Forman, LLP, 171 17th Street NW, Suite 1100, Atlanta, Georgia 30363, Attention Erich N. Durlacher, Esq. The Final Hearing on the Motion and any timely filed objections to this Interim Order will be held before the Court on the _____ **day of June, 2014, at** _____ **.m.,** in Courtroom _____, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia [or Rome, Georgia].

24.     **Waiver of Any Applicable Stay**.   Any applicable stay (including, without limitation, any stay under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

25.     **Headings**.  The headings of this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

26.     **Notices**.  All notices, requests, demands, waivers and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered

or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight

mail or delivery or (d) sent by facsimile.

     i.     If to the Debtors to:

          [ ]

          with a copy to:

          J. Robert Williamson, Esq.
          Scroggins & Williamson
          1500 Candler Building
          127 Peachtree Street, N.E.
          Atlanta, GA 30303
          Email: rwilliamson@swlawfirm.com

     ii.    If to Regions:

          [ ]

          with a copy to:

          David E. Lemke, Esq.
          Robert P. Sweeter, Esq.
          Waller Lansden Dortch & Davis, LLP
          511 Union Street, Suite 2700
          Nashville, TN 37219
          Email: david.lemke@wallerlaw.com

          and

          Erich N. Durlacher, Esq.
          Burr & Forman, LLP
          171 17th Street NW
          Suite 1100
          Atlanta, Georgia 30363
          Email: edurlacher@burr.com

27.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce

this Interim Order according to its terms.

[End of Document]

Prepared and presented by:
SCROGGINS & WILLIAMSON

_____

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA  30303
T:      404-893-3880
E:      rwilliamson@swlawfirm.com
        aray@swlawfirm.com
Counsel for the Debtor

## EXHIBIT A

**(Budget)**

| | 11/20/2014 | 11/21/2014 | 11/24/2014 (1) | 12/1/2014 (2) | 12/8/2014 (3) | 12/15/2014 (4) | 12/22/2014 (5) | 12/29/2014 (6) | 1/5/2015 (7) | 1/12/2015 (8) | 1/19/2015 (9) | 1/26/2015 (10) | 2/2/2015 (11) | 2/9/2015 (12) | 2/16/2015 (13) | Total 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **STARTING CASH DAY 11/20** | $ 24,000 | | | | | | | | | | | | | | | |
| **CASH IN** | | | | | | | | | | | | | | | | |
| Weekly Revenue | 100,000 | 480,000 | 1,470,657 | 1,138,750 | 1,579,520 | 1,196,750 | 3,706,892 | 1,401,887 | 958,750 | 1,506,750 | 846,122 | 895,887 | 908,750 | 908,750 | 846,122 | 17,495,587 |
| **TOTAL CASH IN** | $ 100,000 | $ 480,000 | $ 1,470,657 | $ 1,138,750 | $ 1,579,520 | $ 1,196,750 | $ 3,706,892 | $ 1,401,887 | $ 958,750 | $ 1,506,750 | $ 846,122 | $ 895,887 | $ 908,750 | $ 908,750 | $ 846,122 | $ 17,495,587 |
| **CASH OUT** | | | | | | | | | | | | | | | | |
| Net Pay | | | 695,513 | 41,243 | 695,513 | 41,243 | 695,513 | 41,243 | 695,513 | 41,243 | 695,513 | 41,243 | 695,513 | 41,243 | 695,513 | 5,124,066 |
| Employer Taxes | | | 17,064 | 243,514 | 17,064 | 243,514 | 17,064 | 243,514 | 17,064 | 243,514 | 17,064 | 243,514 | 17,064 | 243,514 | 17,064 | 1,566,404 |
| Employee Taxes | | | 1,657 | 79,651 | 1,657 | 79,651 | 1,657 | 79,651 | 1,657 | 79,651 | 1,657 | 79,651 | 1,657 | 79,651 | 1,657 | 484,791 |
| Benefits | | | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 650,000 |
| Insurance | | | 17,200 | 6,741 | | | | | | 16,516 | 141,751 | 17,203 | 6,741 | | | 686,955 |
| Utilities / utility deposits | | | 203,252 | 15,779 | 281,279 | | 43,978 | 164,711 | 2,498 | 177,280 | | | 75,124 | 15,779 | 98,279 | 685,460 |
| Reserve | | | 66,825 | | | | | | | | | | | | | |
| US Trustee Fee | | | | | | | | | 13,375 | | | | | | 13,375 | |
| Debtor's Professionals | | | | | 10,000 | | 100,000 | | | 10,000 | 100,000 | | | | 100,000 | 200,000 |
| Outside Agent | | | | | | | | | | 10,000 | | | | | | 20,000 |
| Notice Agent | | | 5,000 | | | | | | | | | | | | | 25,000 |
| Other Professional Fees | | | | | | | | | | | | | | | | |
| Other Operating Expenses & Overhead | | | | | | | | | | | | | | | | |
| **TOTAL CASH OUT** | $ – | $ – | 1,532,686 | 1,146,593 | 1,951,159 | 572,155 | 3,484,637 | 3,644,671 | 1,397,632 | 1,054,184 | 1,433,810 | 874,787 | 1,283,723 | 732,358 | 1,385,617 | 23,660,267 |
| **WEEKLY NET CASH** | $ 100,000 | $ 480,000 | (65,427) | (21,448) | 228,361 | 294,615 | 2,220,655 | 3,044,671 | (289,042) | (307,088) | 423,815 | 35,100 | (294,473) | 176,492 | (441,495) | |
| **CUMULATIVE NET CASH** | $ 124,000 | $ 604,000 | 538,371 | 517,138 | 745,491 | 917,729 | 3,245,284 | 3,790,000 | 3,458,998 | 3,685,504 | 3,277,818 | 3,382,966 | 3,696,493 | 3,594,085 | 2,643,290 | $ 2,643,290 |

## EXHIBIT B

### (Financing Documents)

1. Master Trust Indenture, dated as of May 1, 2008, between HMC and it non-debtor affiliate Hutcheson Healthcare Enterprises, Inc. ("**HHE**"), as Obligated Issuers (defined therein), and Regions, as trustee (in such capacity, the "**Master Trustee**") (as amended, restated, supplemented or otherwise modified from time to time, including, without limitation, by (A) the First Supplemental Master Trust Indenture, dated as of May 1, 2008, (B) the Second Supplemental Master Trust Indenture, dated as of May 1, 2008, and (C) the Third Supplemental Master Trust Indenture, dated as of May 1, 2008, each between HMC and the Master Trustee, collectively, the "**Master Indenture**").

2. Loan Agreement, dated May 1, 2008, between the Authority and HMC, which was assigned by the Authority to the Master Trustee.

3. 2008-1 Master Note, dated as of May 1, 2008, issued by HMC in favor of the Master Trustee (as amended, restated, supplemented, replaced or otherwise modified from time to time, the "**2008-1 Master Note**"),

4. 2008-2 Master Note, dated as of May 1, 2008, issued by HMC in favor of Regions (as amended, restated, supplemented, replaced or otherwise modified from time to time, the "**2008-2 Master Note**").

5. 2008-3 Master Note, dated as of May 1, 2008, issued by HMC in favor of Regions (as amended, restated, supplemented, replaced or otherwise modified from time to time, the "**2008-3 Master Note**" and together with the 2008-1 2008-2 Master Note, the "**Master Notes**").

6. Reimbursement Agreement, dated as of May 1, 2008, between HMC and Regions (as amended, restated, supplemented or otherwise modified from time to time, the "**Reimbursement Agreement**").

7. Regions Bank Irrevocable Letter of Credit No. 55102642, dated as of May 28, 2008 (as amended, supplemented, extended or otherwise modified from time to time, the "**2008 LC**").

8. ISDA Master Agreement, dated as of May 28, 2008, between Regions and HMC, including all Schedules and Confirmations relating to same (as amended, restated, supplemented or otherwise modified from time to time, the "**Swap Agreement**").

9. Deed to Secure Debt, Security Agreement and Assignment of Rents, dated as of May 1, 2008, executed by HMC in favor of Regions and recorded on June 2, 2008, in deed book 1439, page 175, with the Clerk of Catoosa County, Georgia (as amended, restated, supplemented or otherwise modified from time to time, the "**Security Deed**").

10. Agreement Not to Encumber or Convey Property, dated as of May 1, 2008, executed by HMC in favor of Regions and recorded on June 2, 2008, in deed book 1439, page 162, with

the Clerk of Catoosa County, Georgia (as amended, restated, supplemented or otherwise modified from time to time, the "**Agreement Not to Encumber**").

11. Environmental Indemnity Agreement, dated as of May 1, 2008, among HMC, HHE and Regions (as amended, restated, supplemented or otherwise modified from time to time, the "**Environmental Indemnity Agreement**").

12. Letter Agreement, dated as of March 29, 2011, between Regions and HMC, and acknowledged by HHE (as amended, restated, supplemented or otherwise modified from time to time, the "**Letter Agreement**").

13. Regions Bank Letter of Credit No. 01814768 in the amount of $1,050,000 for the benefit of Safety National Casualty Corporation (the "**National LC**").

14. Regions Bank Letter of Credit No. 55104971 in the amount of $183,042 for the benefit of The Cincinnati Insurance Company (the "**Cincinnati LC**", collectively with the 2008 LC and the National LC, the "**Letters of Credit**").

15. Forbearance Agreement, dated as of May 23, 2014, among Regions, HMC and HHE, the Authority and Walker County, Georgia (the "**Forbearance Agreement**").

The Master Indenture, the Loan Agreement, the Reimbursement Agreement, the Master Notes, the Letters of Credit, the Swap Agreement, the Security Deed, the Agreement Not to Encumber, the Environmental Indemnity Agreement, the Letter Agreement, the Forbearance Agreement and each other document, instrument or agreement from time to time executed and delivered in connection with such documents, instruments and agreements (including, without limitation, will be referred to herein, collectively, as the "**Financing Documents**").

## Distribution List

J. Robert Williamson
Scroggins & Williamson
1500 Candler Building
127 Peachtree Street, N.E.
Atlanta, GA 30303


Office of the United States Trustee
362 Richard Russell Federal Building
75 Spring Street, S.W.
Atlanta, Georgia 30303

4821-1038-1088