## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| **HUTCHESON MEDICAL CENTER, INC.,** | ) | **Jointly Administered Under** |
| **et al.,** | ) | **CASE NO. 14-42863-pwb** |
| | ) | |
| Debtors. | ) | |

**MOTION (A) FOR AUTHORITY TO SELL ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES
(B) TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS,
LEASES AND LICENSES AND ESTABLISH CURE AMOUNTS IN CONNECTION
THEREWITH; (C) TO ESTABLISH PROCEDURES WITH RESPECT TO
SUCH SALE AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND LEASES, (D) TO CONSIDER APPROVAL OF
<u>BREAKUP FEE, AND (E) TO SHORTEN AND LIMIT NOTICE</u>**

Ronald Glass, as duly appointed Chapter 11 Trustee (the **"Trustee"**) for the bankruptcy

estates of Hutcheson Medical Center, Inc., ("**HMC**") and Hutcheson Medical Division, Inc.,

("**HMD**") (hereinafter, collectively, the "**Debtors**") in the above-styled jointly administered case (the

"**Case**"), submits this Motion, pursuant to Sections 105(a), 363(b), (f) and (m), and 365 of the

Bankruptcy Code, and Bankruptcy Rules 6004, 6006, 9006 and 900,  and seeks the following relief:

(a)  Entry of an order shortening notice and scheduling an expedited hearing on this Motion

(the "**Procedures Hearing**");

(b)  Following the Procedures Hearing, entry of an order (the "**Procedures Order**"):

(i) authorizing the Trustee to sell the Debtors' assets identified herein (the "**Sale**

**Assets**") and to assume and assign specified executory contracts and unexpired leases in connection

with any such sales (the "**Assumed Contracts**"), in accordance with the terms and conditions

contained herein, including the bid procedures and protections set forth on **Exhibit A** hereto and

4843-2017-0537.3

summarized below (the "**Bid Procedures**"), which include procedures, terms and conditions for (A) interested parties to become "Qualified Bidders," (B) Qualified Bidders to submit bids for the Sale Assets, (C) determining cure amounts under 11 U.S.C. § 365 (b)(1) for any of the Assumed Contracts ("**Cure Amounts**"), and (D) approval of a Break-Up Fee for any Qualified Bidder who the Trustee, with the consent of Regions Bank ("**Regions**") and the Official Committee of Unsecure Creditors (the "**Committee**"), may designate as a "Stalking Horse Bidder" (defined below) prior to the Auction Date (defined below);

(ii) scheduling a time, date, and place (the "**Auction Date**") for the Trustee to conduct the sale of the Sale Assets in accordance with the Bid Procedures (the "**Auction**") and approving the sale notice (the "**Auction and Sale Notice**") to be filed with the Court; and

(iii) scheduling a hearing (the "**Sale Hearing**") following the Auction Date to approve the sale of the Sale Assets to the highest and best bidder or, if the Sale Assets are sold in lots, to the highest and best bidders (each a "**Successful Bidder**" and together the "**Successful Bidders**"), and the assumption and assignment of the Assumed Contracts; and

(c) following the conclusion of the Sale Hearing, entry of an order (i) approving the sale(s) of the Sale Assets pursuant to the terms and conditions as approved by the Trustee and Region, free and clear of all liens, claims, interests and encumbrances, to the Successful Bidder or Successful Bidders, (ii) authorizing the Trustee to assume and assign to each Successful Bidder the relevant Assumed Contracts and fixing the Cure Amounts under 11 U.S.C. § 365 (b)(1) in connection therewith, and (iii) waiving the automatic 14-day stay following entry of such order under Bankruptcy Rules 6004(h) and 6006(d) in order to permit the Trustee to consummate

4843-2017-0537.3

immediately the sale(s) of any Sale Assets and the assumption and assignment of Assigned

Contracts to the Successful Bidders.

In support of this Motion, the Trustee respectfully avers as follows:

## Introduction

1.      On November 20, 2014, (the "**Petition Date**"), the Debtors each filed voluntary

petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.      On or about December 2, 2014, an official committee of unsecured creditors (the

"**Committee**") was appointed.

3.      The Court approved the appointment of the Trustee on or about September 21, 2015.

## Jurisdiction And Venue

4.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. Sections 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (N) and (O).  Venue

of the Debtors' Chapter 11 Case and this Motion in this District is proper pursuant to 28 U.S.C.

Sections 1408 and 1409.  The statutory predicates for the relief sought herein are Sections 105(a),

363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007.

## Background And Circumstances
## Leading Up To Filing This Motion

5.      The Debtors provide health care services to the residents of Catoosa, Walker, and

Dade counties through a 179-bed hospital ("**Hospital**") and a skilled nursing care facility ("**SNF**")

that are located adjacent to each other on the Debtors' main campus located at 100 Gross Crescent

Circle, Ft. Oglethorpe, Georgia, an outpatient surgery center and clinic that is located on Battlefield

Parkway in Ringgold, Georgia  ("**Surgery Center**"), and miscellaneous clinics and facilities that

4843-2017-0537.3

are located both on and off the main campus (collectively, the "**Medical Center**"). An integral part of the Northwest Georgia community, the Medical Center is one of the largest employers in the tri-county area. The Medical Center plays a vital economic role in the community, providing over 800 jobs and an outstanding quality of life for its employees. More than 200 of the area's finest physicians with privileges at the Medical Center, along with experienced registered nurses and highly trained clinical staff, provide compassionate, cost-effective healthcare to the community.

6.      During the period of time leading up to the Petition Date, the Debtors' financial condition had deteriorated such that they were unable to satisfy all of their financial obligations. Moreover, a lack of liquidity and working capital, which conditions were projected to worsen later in 2014, limited the Debtors' ability to operate their businesses.   After evaluating alternatives and consulting with their advisors and professionals, the Debtors eventually concluded that it was in their best interest, and the interests of their creditors, employees, and the community they serve to seek protection under Chapter 11 of the Bankruptcy Code in order to preserve the going concern value of their business.

7.      Following the Petition Date, the Debtors determined, with the guidance and advice of its professional advisors, the Committee and Regions, that the best and most efficient exit strategy for the Debtors from bankruptcy is a sale of some or all of the Debtors' assets to one or more purchasers.  Debtors retained Guggenheim Securities, LLC ("**Guggenheim**") to act as their investment banker to market the Debtors' assets.  The Trustee agrees that the best and most efficient exit strategy for the Debtors' estates is a sale of some or all of the Debtors' assets, and has continued Guggenheim's retention.   Guggenheim has assisted the Debtors' management and the

4843-2017-0537.3

- 4 -

Trustee in evaluating and pursuing one or more potential sale transactions. Regions has a first-priority, properly perfected lien and security interest in all or substantially all of the Debtors' assets.

8.    The Trustee, with the assistance of Guggenheim and with input from the Committee and Regions and their respective professionals, is attempting to negotiate the terms and conditions of one or more definitive Asset Purchase Agreements for all or substantially all of the Debtors' assets. In light of the Debtors' lack of liquidity, it is imperative that the Debtors' assets be sold as expeditiously as possible. Because of the Debtors' limited cash availability and the need to obtain certain regulatory approval for any sale of Debtors' assets after this Court's approval, the Trustee is filing this Motion prior to having a definitive Asset Purchase Agreement for the assets. As soon as practicable after a definitive Asset Purchase Agreement is executed with one or more Qualified Bidders, the Trustee will file same with the Court. If for some reason the Trustee is unable to finalize one or more definitive Asset Purchase Agreements for the sale of any of the Debtors' assets at a price and on terms acceptable to the Trustee and Regions prior to the Auction Date, the Trustee reserves the right to withdraw this Motion, in whole or part, prior to the Sale Hearing and shall withdraw the Motion in whole or part if directed to do so by Regions prior to the Sale Hearing.

## **Proposed Bid Procedures**

9.    This section summarizes the key provisions of the Bid Procedures, including procedures regarding the assumption and assignment of the Assumed Contracts to a Successful Bidder, that the Trustee requests this Court approve. Capitalized terms used but not defined in this

4843-2017-0537.3

- 5 -

section shall have the meaning provided in the attached Bid Procedures. Further, to the extent of any inconsistency between the Motion and the Bid Procedures, the Bid Procedures will control.

10.     The Bid Procedures are intended to generate a fair and open sale process for all of the Debtors' assets, including the Hospital, the Surgery Center, the SNF, and the other assets that comprise the Medical Center (the "**Sale Assets**"). The sale of the Hospital and/or the SNF will involve either an assignment of some or all of the Debtors' leasehold interest in the property on which the Hospital and SNF are located, a sublease of same, or fee simple interest in such property if Debtors can obtain same from The Hospital Authority for Walker, Dade and Catoosa Counties (the "Authority), which is the current fee owner of the property. The Trustee will offer the Sale Assets for sale as a whole and in lots, meaning a Qualified Bidder can bid on all of the Sale Assets or can bid separately on the assets that comprise the Hospital, the Surgery Center, the SNF, or some combination of them.

11.     The Bid Procedures provide that only Qualified Bidders may submit a bid for the Sale Assets. To be a Qualified Bidder, a potential bidder must establish, to the reasonable satisfaction of the Trustee and Regions, that it, *inter alia,* (a) has the financial wherewithal to consummate the purchase of the Sale Assets on which it intends to Bid if it is the Successful Bidder, (b) is likely to obtain the requisite approval from the State of Georgia and any other regulatory authorities to own and operate the subject facilities, and (c) has timely submitted a Qualified Bid for some or all of the Sale Assets.

12.     Any examination by a prospective Qualified Bidder of the Sale Assets and other financial information relative to the transaction must be conducted prior to the Auction Date at

4843-2017-0537.3

mutually convenient dates and times by contacting the undersigned counsel for the Trustee and/or Guggenheim. Such inspections should be conducted in a manner which is not disruptive to the Debtors' business. The Trustee may request that prospective Qualified Bidders execute a confidentiality agreement in form reasonably satisfactory to the Trustee prior to conducting any due diligence or obtaining information considered confidential by the Trustee.

13. Qualified Bidders that desire to submit a Qualified Bid for all of the Sale Assets, or one or more of the Hospital, Surgery Center or SNF, must submit their bid by the Bid Deadline, as set forth in the Bid Procedures, and all bids must (a) be in the form of an Asset Purchase Agreement (each, an "APA") reasonably acceptable to the Trustee and Regions, and, to the extent reasonably practicable, together with a redline reflecting all changes the prospective Qualified Bidder made to any draft or definitive asset purchase agreement previously filed with the Court by the Trustee; (b) contain no financing or due diligence contingency; (c) provide for the purchase price to be paid in cash at closing, provided, however, the Trustee, with the consent of Regions and the Committee, may consider non-cash consideration with the value to be determined by the Trustee with consultation with Regions and the Committee; (d) for closing to occur within a period of time established under the Bid Procedures or as otherwise agreed to by the Trustee, with the consent of Regions, (e) be accompanied by a deposit ("Deposit") in cash, in the amount of no less than $150,000, payable to the T r u s t e e , (f) identify with specificity all of the Sale Assets that the prospective Qualified Bidder wishes to purchase, whether real or personal, tangible or intangible; (g) indicate which Assumed Contracts, if any, of the Debtor it requests be assumed and assigned to such Qualified Bidder; and (h) provide that such bid shall not be withdrawn prior to

4843-2017-0537.3

the Sale Hearing, and that such prospective Qualified Bidder's subsequent refusal or failure to comply with its bid after acceptance of same by the Trustee and approval by the Court shall entitle the Trustee to retain the Deposit (a "**Qualified Bid**").

14.    To increase the competitive nature of the sale process, the Bid Procedures provide that the Trustee, after consultation with Guggenheim and with the prior consent of Regions and the Committee, may grant one or more Qualified Bidders "stalking horse" status and protections (each such individual Qualified Bidder a "**Stalking Horse Bidder**"), including an overbid requirement as set forth in the Bid Procedures and a break-up fee and expense reimbursement in an aggregate amount not to exceed $150,000 as approved by the Trustee, with the consent of Regions and the Committee (not to be unreasonably withheld).  The award of Stalking Horse Bidder status and protections may occur without further notice (other than an announcement at the commencement of the Auction) or order of the Bankruptcy Court.  No Qualified Bidder other than a Qualified Bidder who is expressly awarded Stalking Horse Status shall be entitled to a Break-Up Fee, or any other fee payable by the Trustee, the Debtors' estates, or Regions.

15.    After receiving the Qualified Bids, the Trustee will conduct an Auction of the pertinent Sale Assets.  Only Qualified Bidders, the Trustee, Regions, the Committee, and their respective advisors and counsel will be permitted to attend the Auction.  The Auction process is more fully set forth in the Bid Procedures and is designed to maximize the value of the Sale Assets through one or more rounds of bidding, including separate bidding for some or all of the Sale Assets. The Bid Procedures are structured to foster a competitive Auction, which may include one or more groups of bidders competing against each other for some or all of the Sale Assets.  Upon conclusion

4843-2017-0537.3

of the Auction and selection of one or more Successful Bidders, the Trustee will seek entry of a Sale

Order(s) at the Sale Hearing to approve the proposed sale transaction(s).

### Notice of Sale

16.    At the Procedures Hearing, the Trustee requests this Court to approve the form of

notice (the "**Auction and Sale Notice**") to be filed at or prior to the Procedure Hearing, which the

Trustee will send to all parties in interest, including executory contract and unexpired lease

counterparties and creditors, and all parties who have expressed an interest in acquiring all or part of

the Sale Assets.

17.    The Auction and Sale Notice provides sufficient notice of the Bid Procedures, the

potential assumption and assignment of executory contracts and unexpired leases to a Successful

Bidder, and the proposed Cure Amounts.

### Establishing Cure Costs

18.    The Auction and Sale Notice will, upon completion, provide a list of all executory

contracts and unexpired leases that may become Assumed Contracts, together with proposed Cure

Amounts associated with each one.  Any contract or lease counterparty that disputes the Cure

Amounts set forth in the Auction and Sale Notice, or the proposed assumption and assignment of

such contract or lease as an Assumed Contract, must file an objection with the Court and serve on

the parties in interest as set forth in the Auction and Sale Notice prior to the Auction Date.  To the

extent a counterparty fails to submit a timely objection to the potential assumption and assignment

of a contract or lease, the Trustee requests that such counterparty be barred from asserting any

other Cure Amount, disputing the Cure Amount, disputing whether any Successful Bidder has

4843-2017-0537.3

- 9 -

provided sufficient adequate assurance of future performance, or otherwise contesting the assumption and assignment of such Assumed Contract.  To the extent any objection to the assumption and assignment of a contract or lease is filed, the Trustee requests that such objection be addressed at the Sale Hearing.

19.    It shall be each Successful Bidder's responsibility for providing evidence necessary for the Court to find that the Successful Bidder has provided adequate assurance of future performance of an Assumed Contract within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.  Each Successful Bidder will assume all obligations that arise after the closing date under each Assumed Contract to be assigned to that Successful Bidder.  The Debtors and the Debtors' estates will be relieved of any post-assignment liability for any breach of an Assumed Contract in accordance with Section 365(k) of the Bankruptcy Code.

20.    Pursuant to Section 541 of the Bankruptcy Code, all Assumed Contracts are property of the Debtors' estates which may be sold and assigned consistent with Sections 363 and 365 of the Bankruptcy Code.

21.    The sale, assumption and assignment of Assumed Contracts as proposed herein is reasonable and proper under Sections 363 and 365 of the Bankruptcy Code and is in the best interests of the Debtors, their creditors and the estates.  Accordingly, ample cause exists for the proposed sale, assumption and assignment of the Assumed Contracts.

<u>**Reservation of Right to Reject any Qualified Bid**</u>

22.    The Trustee reserves the right to reject any Qualified Bid, after consultation with Regions Bank and the Committee, or if directed to do so by Regions, which is deemed inadequate,

4843-2017-0537.3

- 10 -

insufficient, or contrary to the best interests of the Debtors' estates.    Regions also reserves the right to credit bid any or all of its claim for any of the Sale Assets, pursuant to Section 363(k) of the Bankruptcy Code, and shall be deemed a Qualified Bidder if it determines, in its sole discretion, to make a credit bid.  Any disputes which may arise in connection with the bidding process will determined by this Court.

23.    Simultaneously herewith, the Trustee has served a copy of this Motion, along with exhibits, on the Office of the United States Trustee, counsel for Regions Bank and counsel for the Committee.

## Miscellaneous Provisions

24.    The Trustee seeks authorization to take such action and to execute and deliver any approved asset purchase agreement and such other documents, agreements and instruments as may be necessary or advisable to effectuate the terms thereof or any other Court approved sale, provided that the Trustee may not agree to any material modification to an approved asset purchase agreement or ancillary documents without order of the Court.

## Good Faith Purchaser Designation

25.    As part of the relief sought by the Trustee, the Trustee will ask the Court to designate any Successful Bidder as a good faith purchaser, as such term is utilized in Section 363(m) of the Bankruptcy Code.  Such designation can be made by a Bankruptcy Court in the context of a sale of assets of a debtor when it has been established that the proposed purchaser is an unrelated third party, not affiliated with or having any insider relationship with the debtor, and

4843-2017-0537.3

when the proposed transaction is for fair value and is the result of arms length negotiations between the parties. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986).

26.    With respect to the proposed transactions, the Trustee anticipates that any Successful Bidder will meet the qualifications for designation as a good faith purchaser in that: (a) they will not be affiliated in any way with the Debtors, and (b) they and their representatives will have negotiated in good faith and at arm's length with the Trustee, without any collusion.  It is expected that any Successful Bidder may make offers of employment to a number of the Debtors' employees, though there is not currently any definitive agreement, written or oral, between any prospective Successful Bidder and any of the Debtors' employees.  Any discussions of the potential employment of employees of the Debtors by a Successful Bidder shall not, however, negatively affect the Debtors' negotiations or detract from the fairness of any proposed transaction. See In re Integrated Resources, Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) (employment discussions between Debtors' management and prospective buyer did not taint sale process so as to negate the application of the business judgment rule to the propriety of the sale transaction).

**Best Interests Of The Estate**

27.    The Trustee believe that the sale of the Sale Assets as requested herein will provide a significantly greater realization for the Sale Assets than the liquidation value that would be obtained if the Sale Assets were not sold expeditiously in the manner requested herein and the Debtors' business was forced to cease operations.

28.    Section 363(b) of the Bankruptcy Code provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

4843-2017-0537.3

of the estate." Under the prevailing case law, a sale under Section 363(b) requires that the Court

"expressly find from the evidence presented . . . a good business reason" to approve the sale.

Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071

(2d Cir. 1983). Accord In re Montgomery Ward Holding Corp., 242 B.R. 147, 153–54

(Bankr. D. Del. 1999); Stephens Industries, Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir.

1986); In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

29.     The present circumstances of this Case warrant approval of the sale of the Sale

Assets under the standard articulated in Lionel. Thus, a sale of the Sale Assets is appropriate as

such transaction shall represent the exercise of sound business judgment on the part of the Trustee.

24.     Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

> (f)  The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than the
> estate, only if --
>
> (2)  such entity consents; or
>
>         *       *       *
>
> (5)  such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. Section 363(f)(2), (5).

25.     Approval of the proposed sale of the Sale Assets to Successful Bidder comports

with Section 363(f)(2) of the Bankruptcy Code in that all creditors asserting valid interests in and

against Sale Assets will consent to the transaction. To the extent that any creditor asserting a valid

interest in and against Sale Assets does not consent to the sale, the Trustee believes that such

4843-2017-0537.3

- 13 -

creditor could be compelled to accept a money satisfaction of such interest in accordance with Section 363(f)(5) of the Bankruptcy Code.

26.     In addition, Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The purpose of Section 105(a) is to insure a Bankruptcy Court's power to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction." 2 Collier on Bankruptcy, 105.01, at 105-2 (15th ed. 1993).  Thus, this Court may exercise its equitable powers to grant the relief requested in this Motion.

27.     Finally, approval of a sale transaction as contemplated herein will help facilitate the Trustee's ability to distribute the sale proceeds in accordance with the priorities delineated in the Bankruptcy Code.

## Modification of Rule 6006 Procedures

35.     The 2007 amendments to the federal Rules of Bankruptcy Procedure added certain additional procedural requirements to Bankruptcy Rule 6006 which apply where the debtor seeks to assume and assign a number of executory contracts and unexpired leases in one motion. Subdivision (e) provides, in pertinent part, that the a debtor may not seek to assign multiple executory contracts or unexpired leases in the same motion unless they "are to be assigned to the same assignee," or "the court otherwise authorizes the motion to be filed."   Subdivision (f), in turn, prescribes specific requirements to be followed when such motions are authorized:

*(f) Omnibus Motions*

*A motion to reject or, if permitted under subdivision (e), a motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall:*

4843-2017-0537.3

- 14 -

*(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;*

*(2) list parties alphabetically and identify the corresponding contract or lease;*

*(3) specify the terms, including the curing of defaults, for each requested assumption or assignment;*

*(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;*

*(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and*

*(6) be limited to no more than 100 executory contracts or unexpired leases.*

36.    Subdivision (f) of Rule 6006 became effective in December 2007.  Notwithstanding the mandatory language utilized, the Advisory Committee Report regarding the 2007 amendments to Rule 6006 indicates that bankruptcy court retains flexibility to modify the specific requirements of Subdivision (f) to meet the needs of a particular case, so long as effective notice is provided to the non-Debtors parties to the contracts or leases to be assigned.

*"An omnibus motion to assume, assign, or reject multiple executory contracts and unexpired leases must comply with the procedural requirements set forth in subdivision (f) of the rule, unless the court orders otherwise. These requirements are intended to ensure that the nondebtor parties to the contracts and leases receive effective notice of the motion. . . ."*

37.    In the instant case, the Trustee has complied (or shall comply) substantially with the requirements of  Bankruptcy Rule 6006 for the assumption and assignment of multiple contracts and leases, in that (a) the statement required by Bankruptcy Rule 6006(f)(1) is set forth on page 1 above, in bold type and capital letters, immediately following the caption, (b) Exhibits will be attached to any Asset Purchase Agreement listing non-Debtors  parties to the Assumed Contracts under that Asset Purchase Agreement and will identify the corresponding contract or lease, (c)  proposed Cure

4843-2017-0537.3

Amounts shall be identified, (d) any Successful Bidder at the Auction Sale will be required to provide at or before the Sale Hearing sufficient information for non-Debtor parties to determine the Successful Bidder's ability to provide adequate assurance of performance under the Assumed Contracts, and (e) this Motion is designated as the "First" such motion, and any further motions seeking authority to assume and assign multiple contracts or leases will be numbered consecutively. Under the circumstances, the procedures proposed under the Motion substantially complies with Bankruptcy Rule 6006 and will provide effective notice to non-Debtors parties to the Assumed Contracts. Therefore, the Trustee asks that the Court approve and authorize at the Procedures Hearing the proposed method of proceeding under the Motion with respect to the Assumed Contracts.

## Notice - Expedited Consideration

38.    The Trustee proposes to serve notice of the preliminary Procedures Hearing to consider proposed sale procedures on the Office of the United States Trustee, all non-Debtor parties to any Assigned Contracts, counsel for the Committee, counsel for Regions Bank, and all parties identified on the Master Service List maintained in this case.

39.    Federal Rule of Bankruptcy Procedure 6004 provides, in pertinent part, as follows:

> (a) Notice of Proposed Use, Sale, or Lease of Property. Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) . . . .

Fed.R.Bankr.P. 6004.

40.    Federal Rule of Bankruptcy Procedure 9007 provides, in pertinent part, as follows:

4843-2017-0537.3

> When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.

Fed.R.Bankr.P. 9007.

41.     The Trustee contends that the forms of notice set forth above and the period for scheduling the hearing on the sale comport with Bankruptcy Rules 6004, 6006 and 9007, constitute good and sufficient notice of the relief sought herein, and of all hearings and procedures contemplated hereby.

## **Waiver of 14-Day Stay on Closing**

42.     Bankruptcy Rules 6004(h) and 6006(d) respectively provide that an order authorizing the use, sale, or lease of property and an order authorizing the assumption and assignment of executory contracts or unexpired leases will be stayed for fourteen days after entry of such approval orders unless the court orders otherwise.  Because of the need to close the transactions contemplated herein as promptly as possible, the Trustee requests that the Court order and direct that the order approving this Motion shall <u>not</u> be automatically stayed for fourteen days.

43.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Trustee respectfully requests that the Court grant this Motion and enter one or more orders providing relief as requested hereinabove, and granting such other and further relief as may be just and proper.

This 13th day of October, 2015.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

/s/ J. Hayden Kepner, Jr.

| | |
|---|---|
| 1500 Candler Building | J. ROBERT WILLIAMSON |
| 127 Peachtree Street, NE | Georgia Bar No. 765214 |
| Atlanta, GA  30303 | ASHLEY REYNOLDS RAY |
| T:  (404) 893-3880 | Georgia Bar No. 601559 |
| F:  (404) 893-3886 | J. HAYDEN KEPNER, JR. |
| E:  rwilliamson@swlawfirm.com | Georgia Bar No. 416616 |
|      aray@swlawfirm.com | |
|      hkepner@swlawfirm.com | *Special Counsel for the Trustee* |

4843-2017-0537.3

## EXHIBIT A

## SALE AND BIDDING PROCEDURES

These Sale and Bidding Procedures (the "Bid Procedures") set forth the process by which Ronald Glass, as duly appointed Chapter 11 Trustee (the "**Trustee**") for the bankruptcy estates of Hutcheson Medical Center, Inc., ("**HMC**") and Hutcheson Medical Division, Inc., ("**HMD**") (hereinafter, collectively, the "**Debtors**"), will conduct the sale process and auction of substantially all of the Debtors' assets.  Specifically, with the exception of the Excluded Assets (defined below), the Trustee is seeking to sell all of the Debtors' assets, real and personal, tangible and intangible, including the Debtors'  179-bed  hospital ("**Hospital**") and the skilled nursing care facility ("**SNF**") that are located adjacent to each other on the Debtors' main campus located at 100 Gross Crescent Circle, Ft. Oglethorpe, Georgia, an outpatient surgery center and clinic that is located on Battlefield Parkway in Ringgold, Georgia  ("**Surgery Center**"), miscellaneous clinics and facilities that are located both on and off the main campus, and all of the assets related to same (collectively, the "**Medical Center**").  Pursuant to the terms and conditions contained herein, the Trustee will seek to sell all or substantially all of the Debtors' assets, including the Hospital, SNF, the Surgery Center, and other assets comprising the Medical Center (the "**Sale Assets**").  The sale of the Hospital and/or the SNF will involve either an assignment of some or all of the Debtors' leasehold interest in the property on which the Hospital and SNF are located, a sublease of same, or fee simple interest in such property if Debtors can obtain same from The Hospital Authority for Walker, Dade and Catoosa Counties, which is the current fee owner of the property.

The sale of the Sale Assets, including assumption and assignment of the Assumed Contracts, is subject to competitive bidding as set forth herein and approval of the sale, assumption and assignment pursuant to sections 363 and 365 of the United States Bankruptcy Code and Rules 2002, 6004, 6006, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Sale**").  Any prospective purchasers desiring to obtain a copy of the bidding materials may do so by complying with these Bid Procedures and contacting Guggenheim Securities, the Trustee's representative, at the address and contact information listed below:

Jay C. Jacquin
Managing Director
Guggenheim Securities
3414 Peachtree Road, NE
Suite 960
Atlanta, GA 30326
404-585-2207 (ATL office)
jay.jacquin@guggenheimpartners.com

**BIDDING PROCEDURES**[1]

(i)      Guggenheim Securities shall provide copies of the Bid Procedures, any draft or definitive asset purchase agreement filed with the Court by the Trustee, and available marketing materials to all prospective purchasers upon the execution of a nondisclosure and confidentiality agreement (the "NDA").  The Trustee shall allow prospective purchasers to conduct due diligence, including reasonable access to the Medical Center premises and management upon reasonable notice, provided however, that (a) each prospective purchaser shall have signed the NDA; (b) any due diligence investigation shall be conducted in a reasonable manner and without unduly interfering with or adversely affecting or impeding the patients, residents, employees or the conduct of the Debtors operations; and (c) there shall be no direct contact with any individual patient, resident or resident group, without prior written approval by the Trustee.  Prospective purchasers may contact Guggenheim Securities at the address or other contact information listed above to arrange appointments to conduct due diligence.

(ii)     On or before the Auction Date (defined below), prospective purchasers shall complete all due diligence

(iii)    In order to be considered as a Qualified Bidder, a potential bidder must submit a definitive asset purchase agreement (each such one defined as an "APA"), in a form reasonably acceptable to the Trustee and Regions Bank ("**Regions**"), setting forth all terms and conditions of a legally binding bid for the purchase of some or all of the Sale Assets, together to the extent reasonably practicable with a redlined copy of such APA marked against any draft or definitive asset purchase agreement previously filed with the Court by the Trustee.  Such bid may provide for the acquisition of some or all of the Sale Assets. Bids must be received by Guggenheim on or before _____ at 4:00 p.m. Eastern Time (the "**Bid Deadline**").  All bids must also satisfy the requirements set forth below to be considered a "Qualified Bid."  Guggenheim shall immediately distribute all bids received to Trustee, Regions, Committee, to any Stalking Horse Bidders, and, in the discretion of the Trustee, after consultation with Regions and the Committee, any other Qualified Bidders.  Counsel for the Trustee also shall file a summary of the bids with the Bankruptcy Court no later than 24 hours prior to the Auction.

(iv)    In addition to submitting a bid as indicated above by the Bid Deadline, for a prospective bidder to be a Qualified Bidder, the bidder must furnish to Guggenheim, the Trustee, the Committee and Regions such information as necessary to evidence such bidder's compliance with the requirements of a "**Qualified Bidder**" as set forth hereinafter.  The Trustee, subject to the recommendation of Guggenheim and the approval and consent of Regions and the Committee, shall determine whether a bidder is a "Qualified Bidder" based on whether such bidder has the financial wherewithal to consummate the purchase of the Sale Assets on which it intends to Bid if it is the Successful Bidder, and is likely to obtain the requisite approval from the State of Georgia and any other regulatory authorities to own and operate the subject facilities.  In making such determination, Guggenheim, the Trustee,

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Bidding Procedures Order.

4834-7744-4905.2

Regions, and the Committee may take into account whether the prospective Qualified Bidder is experienced at owning or operating the facilities similar to the Hospital, SNF, or Surgery Center, and has the expertise, reputation, personnel, finances, and overall ability to own and operate same. Any Qualified Bidder shall also provide to Guggenheim, the Trustee, Regions, and the Committee Trustee full disclosure of any other entity that will be participating in such bid.

(v)     In order to be considered a Qualified Bid, in addition to satisfying the above requirements, a bid must (1) contain no financing or due diligence contingency; (2) be payable in cash, cashier's check, certified check and/or wire transfer fund, or any other immediately available funds in any demand or deposit account, each in currency of United States dollars (collectively, "**Cash**"), provided, however, the Trustee, with the consent of Regions and the Committee, may consider non-cash consideration with the value to be determined by the Trustee following consultation with Regions and the Committee; (3) be able to close within 10 days after receipt of all necessary regulatory approval, (4) identify with specificity all of the Sale Assets that the prospective Qualified Bidder wishes to purchase, whether real or personal, tangible or intangible; (5) indicate which third party contracts and unexpired leases, if any, of the Debtor it requests be assumed and assigned to such bidder; (6) be accompanied by a deposit ("**Deposit**") in cash, in an amount of no less than $150,000 payable to the T r u s t e e ;  a n d  ( 7 ) provide that such bid shall not be withdrawn prior to the Sale Hearing, and that such prospective Qualified Bidder's subsequent refusal or failure to comply with its bid after acceptance of same by the Trustee and approval by the Court shall entitle the Trustee to retain the Deposit. Such bids, if made by Qualified Bidders, shall be considered to be "**Qualified Bids**." Only Qualified Bids will be considered.

(vi)    Regions reserves the right to credit bid at the Auction (defined below) any or all of its claim for any of the Sale Assets, pursuant to Section 363(k) of the Bankruptcy Code, and shall be deemed a Qualified Bidder for all purposes without having to comply with the foregoing requirements, if it determines, in its sole discretion, to make a credit bid at the Auction, and any credit bid shall be a Qualified Bid.

(vi)    By submitting a bid, each prospective Qualified Bidder shall be deemed to acknowledge: (i) that it is bound by these Bid Procedures; (ii) that it had an opportunity to inspect and examine the Debtors and all other pertinent information with respect to the Debtors before submitting such bid and that each such bid is based solely on that review and upon each bidder's own investigation and inspection; (iii) that is has consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of any transaction documents relating to the prospective Qualified Bidder's bid; (iv) in making its bid, such bidder is not relying upon any written or oral statements, representations or warranties of the Debtors, the Trustee, the Committee or Regions, or their respective agents or representatives; and (v) that it consents to being an Individual Facility Backup Bidder (defined below) or a Business Enterprise Backup Bidder (defined below), as the case may be, if it not selected as the Successful Bidder at the conclusion of the Auction.

4834-7744-4905.2

(vii)     Deposits may be wired pursuant to instructions provided by Guggenheim or the Trustee. Deposits will be held in escrow by the Trustee and will be returned to such bidder (if such bidder is not the Successful Bidder within ten (10) business days following the entry of the Sale Order (as defined below).

(viii)    The Sale Assets shall be sold AS IS/WHERE IS, free and clear of all liens, claims, interests, and encumbrances existing as of the date of the closing of the transactions contemplated by and in accordance with the Successful Bidder's Asset Purchase Agreement(s) and Sale Order (as defined below), subject only to title exceptions and other assumed liens, claims, interests and encumbrances that are mutually agreed to by the parties, and provided that Regions consents to the sale of the Sale Assets.

(ix)      Prior to the commencement of the Auction (defined below), Guggenheim, the Trustee, the Committee and/or Regions may have discussions with each Qualified Bidder with respect to the terms and conditions of such Qualified Bids and Guggenheim will have selected a Qualified Bid acceptable to the Trustee, with the consent of Regions, to become the opening bid at the Auction for each the Sale Assets, either in whole or in lots.

(x)       The Trustee, in its discretion, after consultation with Guggenheim Securities, and the prior consent of Regions, may agree that any one or more Qualified Bidders shall have stalking horse status and protections (each such individual party, a "**Stalking Horse Bidder**"), including a break-up fee and expense reimbursement in an amount of no more than $150,000, as approved by the Trustee with the consent of Regions and the Committee (the "**Break-Up Fee**"). The award of Stalking Horse Bidder status and protections may occur without further notice (other than an announcement at the commencement of the Auction) or order of the Bankruptcy Court. No Qualified Bidder other than a Qualified Bidder who is expressly awarded Stalking Horse Bidder Status shall be entitled to a Break-Up Fee, or any other fee payable by the Trustee, the Debtors' estates, or Regions.

(xi)      The sale will be conducted on _____**2015** at _____m. (ET) at the offices of _____ (the "**Auction**"). Participation at the Auction shall be in person only. Only Qualified Bidders, Guggenheim, the Trustee, the Committee, and Regions, and each of their respective representatives and advisors, may attend the Auction. Participation by telephone or other electronic means will be prohibited.

(xii)     Each APA presented by Qualified Bidders, including the Stalking Horse Bidder, will ultimately be subject to Bankruptcy Court approval and is subject to higher and better offers at the Auction.

(xiii)    Each Qualified Bidder, other than the Stalking Horse (each a "**Competing Bidder**"), will have the ability to increase its Qualified Bid prior to the commencement of the Auction. Thereafter, Competing Bidders and the Stalking Horse Bidders shall be permitted to submit and raise their bids with respect to the Sale Assets subject to their Qualified Bids until all Qualified Bidders cease bidding or raising their bids. To the extent there are more than one bid for the Sale Assets, the following procedures will apply:

4

(A)     First, the Trustee will conduct an auction of each of the Hospital, SNF, and Surgery Center (each an "**Individual Facility**") in the order established by Guggenheim, in consultation with the Debtor, the Committee and the Trustee and announced at the commencement of the Auction.   Only the Trustee, Regions, the Committee, and any Qualified Bidders that have submitted Qualified Bids, together with their respective advisors and attorneys, will be permitted to attend the Auction. Qualified Bidders for a specific Individual Facility (either as a single Individual Facility or as part of a bid for two or more Individual Facilities) may participate in the Auction with respect to such Individual Facility or, if there are competing Individual Facility Qualified Bids for multiple Individual Facilities, an Auction will be held for the sale of such multiple Individual Facilities together.[2]  The purchase price for the initial competing bid (the "**Initial Competing Bid**") for an Individual Facility must be higher than the current purchase price submitted by any Stalking Horse Bidder of such Individual Facility by at least $100,000 (plus any Break-Up Fee to be paid to a Stalking Horse pursuant to the Bidding Procedures as set forth herein) and must be payable in Cash.  Each successive bid must be in increments of at least $50,000.  At the conclusion of all bidding for such Individual Facility, Guggenheim, the Trustee, Regions and the Committee shall select the party who has submitted the highest or otherwise best offer to purchase such Individual Facility (the "**Facility Successful Bidder" and the "Facility Successful Bid,**" respectively), each such Facility Successful Bid shall be acceptable to Regions in its sole discretion.  After the conclusion of the Auction, the Trustee, Regions and the Committee reserve the right to designate one or more Qualified Bidders as a backup bidder(s) (each such party, an "**Individual Facility Backup Bidder**");

(B)     After concluding the Auction for each Individual Facility, the Trustee will conduct an auction for all of the Sale Assets as a whole (the "**Business Enterprise**").  Prior to such auction, the Trustee, Regions and the Committee shall hold discussions with the Qualified Bidders to discuss proposals to combine existing bids for the entire Business Enterprise.  The purchase price for the initial competing bid for the Business Enterprise must be higher than the current price submitted by the Stalking Horse Bidder for the Business Enterprise by an amount acceptable to the Trustee and Regions (plus any Break-Up Fee to be paid to a Stalking Horse Bidder for the Business Enterprise pursuant to the Bidding Procedures set forth herein) or if no such bid exists, the aggregate price of the offers of the Individual Facility Successful Bidder(s), and must be payable in Cash.  Each successive bid must be in increments of at least $50,000.  At the conclusion of all bidding for the Business Enterprise, the Trustee, Regions and the Committee shall select the party who has submitted the highest or otherwise best offer for the Business Enterprise (the "**Business Enterprise Successful Bidder,**" and the "**Business Enterprise**

---

[2] A bidder for one Individual Facilities may increase its bid at the Auction to compete against a bid that provides for the proposed acquisition of such Individual Facility, plus any other Individual Facility combined in such offer.  For example, if a bidder has submitted a bid for Facility "A" and there exists another bid for both Facility "A" and Facility "B", the Qualified Bidder for Facility "A" can increase its bid on Facility "A" at the Auction and the Qualified Bidder for both Facility "A" and Facility "B" may participate in the Auction for Facility "A" only.  Another example is if there is a Qualified Bid for Facilities "A," "B," and "C," and another Qualified Bid for Facilities "B" and "C," there will be an Auction for the sale of both Facilities "B" and "C" together.

4834-7744-4905.2

**Successful Bid,**" respectively).  At the conclusion of the Auction, the Trustee, Regions and the Committee reserve the right to designate a Qualified Bidder who bid on the Business Enterprise as a backup bidder for the Business Enterprise (the "**Business Enterprise Backup Bidder**").

(C)    At the completion of bidding for the Business Enterprise, the Trustee, in consultation with Regions and the Committee, will determine which bid or bids represent the highest and best offers based upon the results of the Auction— i.e., there will be a comparison of the aggregate purchase price for the Facility Successful Bids to the Business Enterprise Successful Bid and a determination shall be made as to which bid or combination of bids provide for the highest and best return on the Sale Assets (the "**Successful Bidder(s)**").  Such determination shall be made by the Trustee, with the advice of Guggenheim and in consultation with the Committee and Regions, and must be acceptable to Regions in its sole discretion.

(xiv)    , Following the Auction, the Trustee reserves the right to require the Successful Bidder to deposit an additional amount in Cash that, when combined with the Deposit, equals five percent (5%) of the purchase price reflected in the final bid of the Successful Bidder(s) ("**Additional Deposit**"), which shall be due within one day of the Auction or as otherwise agreed to by the Trustee.

(xv)    The Successful Bidder(s) and the Trustee shall execute prior to the Sale Hearing the final asset purchase agreement(s) reflecting the terms of the winning bid(s) of the Successful Bidder(s) (the "**Successful Bidder Purchase Agreement**"), subject to Bankruptcy Court approval.  The form and substance of the Successful Bidder Purchase Agreement shall be subject to the prior approval of Regions.  The Successful Bidder Purchase Agreement(s) shall be filed with the Bankruptcy Court at or prior to the commencement of the Sale Hearing for approval.

(xvi)    The bids of any Facility Backup Bidder or Business Enterprise Backup Bidder shall remain open and irrevocable and subject to acceptance by the Trustee until the earlier to occur of (a) the successful completion of the sale with the Successful Bidder or (b) ten (10) days after the Outside Closing Date.  No acts by the Trustee or Guggenheim or their respective agents or attorneys, whether in conjunction with the Sale Hearing or otherwise, shall affect the irrevocable nature of this bid.

(xviii)  **THE OFFER(S) BY THE SUCCESSFUL BIDDER(S) SHALL BE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT.**  No bids will be accepted or considered after the close of the Auction.  A hearing to approve the Successful Bids (the "**Sale Hearing**") shall take place on _____ 2015, at _____m. (ET).  At such hearing the Trustee will seek, and the Bankruptcy Court will consider, approval of the sale to the Successful Bidder(s) and entry of an order authorizing and approving the transactions contemplated by the Successful Bidder Purchase Agreement(s) (the "**Sale Order(s)**").  No offers or bids will be accepted or considered at the Sale Hearing.  The Sale Order(s) shall be acceptable in form and substance to the Trustee, Regions, the Committee, and the Successful Bidder(s).

4834-7744-4905.2

(xix)   The foregoing deadlines may be extended by the Trustee, with the consent of Regions, if it is determined that an extension of the above deadlines are necessary or desirable to maximize value and there is an adequate source of funds available to maintain the operations of the Debtors as currently operated.  Notice of any extensions shall be filed with this Court and shall state the amended dates (the "**Sale Extension Notice**").  The Sale Extension Notice, if any, shall be served on all parties in interest, including Qualified Bidders.

(xx)    Notwithstanding anything to the contrary contained in the Bid Procedures, the Trustee and Regions reserve the right to terminate the sale and the sale process with respect to one or more of the Individual Facilities or the Business Enterprise, including the Auction of same, for any reason and at any time prior to the Sale Hearing, at which time the sale with respect to the subject Individual Facilities or Business Enterprise shall be so terminated.

(xxi)   Except as otherwise agreed to by the Trustee and Regions, and approved by the Bankruptcy Court, the closing(s) of the sale(s) of the Sales Assets ("**Closing(s)**") shall take place at the offices of _____ no later than ten (10) days following receipt of required regulatory approval relating to the Sale(s), but in no event later than sixty (60) days following the entry of the Sale Order unless extended by agreement of the Successful Bidder, Regions and the Trustee. (the "**Outside Closing Date**").  With respect to the Closing, time of performance by the Successful Bidder(s) is of the essence and the Successful Bidder must use its best efforts to obtain any necessary regulatory approval as soon as possible.

        (i)     In the event the Successful Bidder(s) fails to close the sale prior to the Outside Closing Date, or the Court determines that the Successful Bidder is not seeking regulatory approval in good faith, it will forfeit its Deposit and any Additional Deposit, which Deposit and Additional Deposit shall immediately be turned over to Regions, and the subject Sale Assets may be sold to one or more Facility Backup Bidders or to a Business Enterprise Backup Bidder, subject to the provisions of the applicable APA of the Trustee and to the extent approved by Regions (each, a "**Backup Bidder Agreement**"). The Trustee shall be permitted to consummate any such transaction under a Backup Bidder Agreement without further order of the Bankruptcy Court.

(xxii)  The liens of Regions shall attach to the "Net Sale Proceeds."  The "**Net Sale Proceeds**" shall be the amount equal to the purchase price under the Successful Bidder Purchase Agreement(s) or the Backup Bidder Agreement, as applicable, less the reasonable direct costs of sale, including Guggenheim's fees and expenses.  At closing, all of the Net Sale Proceeds shall be paid to Regions, less an amount equal to the gross amount of accrued, unpaid post-petition liabilities (excluding government liabilities) that have not been assumed by the Successful Bidders (the "**Hold-Back**"); the Hold-Back shall include the fees and expenses that fall within the "Carve Out" as defined in the last cash collateral order entered by the Court or otherwise agreed to in writing by the Trustee and Regions. The Hold-Back shall be retained by the Trustee in a separate segregated account to be distributed pursuant to further order(s) of the Court. Regions liens and security interests shall attach to the Hold-Back to the same extent and in the same priority as such liens and

7

security interests existed on the Sale Assets.  The establishment of the Hold-Back is for purposes of administrative convenience, and all rights are reserved with respect the Hold-Back. To be clear, and without limiting the foregoing, the creation of the Hold-Back is neither an admission nor acknowledgment that any party has a claim to the Hold-Back other than Regions, and is without prejudice to Regions' claims to such funds.

(xxiii)  The Trustee may, with the prior consent of Regions and the Committee, and shall, at the direction of Regions, modify the Bid Procedures in good faith and without further order of the Bankruptcy Court to promote the efficiency and fairness of the process.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this date I served a true and correct copy of the attached **Motion** by causing same to be deposited in the United States Mail with adequate postage affixed thereon and addressed to the following persons:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street, S. W.
Atlanta, Georgia 30303

David E. Lemke
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

David B. Kurzweil
Greenberg Traurig, LLP
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30303

Erich N. Durlacher
Burr & Forman, LLP
Suite 1100, 171 17th Street NW
Atlanta, GA 30363

This 13th day of October, 2015.

SCROGGINS & WILLIAMSON, P.C.

  /s/ J. Hayden Kepner, Jr.

1500 Candler Building          J. ROBERT WILLIAMSON
127 Peachtree Street, NE       Georgia Bar No. 765214
Atlanta, GA  30303           ASHLEY REYNOLDS RAY
T:  (404) 893-3880            Georgia Bar No. 601559
F:  (404) 893-3886            J. HAYDEN KEPNER, JR.
E:  rwilliamson@swlawfirm.com    Georgia Bar No. 416616
     aray@swlawfirm.com
     hkepner@swlawfirm.com       *Special Counsel for the Trustee*

4843-2017-0537.3