EXHIBIT C

**LifeBrite Management Inc**.
115 Glengate Avenue
Atlanta, GA 30328.

December 6, 2015

Mr. Ron Glass
Chapter 11 Trustee of
Hutcheson Medical Center, Inc.
100 Gross Crescent Circle
Fort Oglethorpe, GA 30742-3669

Seth Guterman, MD
President
People's Choice Hospital, as Manager of
Hutcheson Medical Center, Inc.
2000 Spring Rd.
Suite 200
Oak Brook, IL 60523

**Re: Hutcheson Medical Center, Inc.**

Dear Mr. Glass and Dr. Guterman:

LifeBrite Management Inc. ("LifeBrite") is pleased to confirm in this letter its willingness to provide a debtor in possession revolving line of credit for Hutcheson Medical Center, Inc. ("Borrower") which would be secured by, among other items, the accounts receivable of Borrower incurred on or after December 6, 2015.

| | |
|---|---|
| **Borrower:** | Hutcheson Medical Center, Inc. |
| **Lender:** | An affiliated fund of LifeBrite Management Inc. ("LifeBrite" or "Lender") |
| **Facility:** | Debtor-in-possession revolving credit loan |
| **Initial Facility Amount:** | Up to $1,600,000.00 |
| **Interest rate:** | The Prime Rate plus 2% of the outstanding loan balance. "Prime Rate" means the rate of interest quoted from time to time by [Wells Fargo Bank] as its prime rate or a comparable reference rate designated by Lender. |
| **Purpose:** | To provide working capital to the Borrower prior to the sale of its hospital assets to People's Choice Hospital, LLC ('PCH") or one of its affiliates. |

| | |
|---|---|
| **Bankruptcy Court:** | United States Bankruptcy Court for the Northern District of Georgia, or other court having jurisdiction over the Borrower's Bankruptcy Case. |
| **Bankruptcy Case:** | Borrower's bankruptcy case, pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") as Case No 14-42863 in the Bankruptcy Court |
| **Maturity Date:** | The earlier to occur of (a) failure to enter the Final Financing Order on or before December 31, 2015, (b) the closing of sale of the Borrower's hospital assets pursuant to section 363 of the Bankruptcy Code; (c) any attempt to (i) sell the Borrower's hospital assets to a party other than PCH or (ii) reorganize the Borrower pursuant to a plan that does not contemplate the transfer of the hospital assets to PCH; (d) confirmation by the Bankruptcy Court of a plan of reorganization for the Borrower, (e) conversion to a Chapter 7 proceeding, (f) a dismissal by the Bankruptcy Court of Borrower's Bankruptcy Case, (g) the Borrower shall file a motion or other pleading seeking the dismissal of the Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise (h) July 31, 2016, or (h) any date determined in accordance with an event of default. |
| **Repayment:** | Interest shall accrue and be calculated monthly in arrears on the outstanding principal balance; all accrued interest and principal due in full on the Maturity Date, from the proceeds of accounts receivable or in equity in a newly formed acquisition in the event that PCH is the successful purchaser of the Seller's hospital assets.<br><br>For the avoidance of doubt, Lender shall be paid solely out of the proceeds of the Collateral and the Borrower shall have no obligation to repay the loan contemplated by this term sheet except from the proceeds of the Collateral. |
| **Collateral:** | Lender requires a "Super Priority Lien" on all accounts receivable arising from services rendered on or after December 6, 2015 which shall include all "periodic interim payments" received on or after December 6, 2015 and all "disproportionate share payments" received on or after December 6, 2015 (except the first such payment). |
| **Interim DIP Financing Order:** | Prior to providing any funding, Lender will require that the Bankruptcy Court approve an interim financing order (the "Interim DIP Financing Order"), following notice to the U.S Trustee, the official committee of unsecured creditors in the Borrower's Bankruptcy Case, all holders of liens in the Borrower's assets, all |

4848-7109-6363, v. 2

|  |  |
|---|---|
|  | taxing authorities and all parties requesting notice, that contains all appropriate findings and the following: (i) authorization of Borrower to enter into the transactions contemplated hereby, (ii) a grant to Lender of a so-called super-priority administrative claim in the Borrower's bankruptcy proceeding with priority over any and all administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b) 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code as provided under Section 364(c)(1) of the Bankruptcy Code, and subject to no carve-outs in favor of third parties, (iii) a grant to Lender of a first priority lien and security interest in all the Borrower post-petition accounts arising after December 6, 2015, (v) a prohibition against using the proceeds of the loan for any purpose except those set forth in the a budget approved by the Lender and PCH, (vi) an order that all government payments owing to Borrower be paid to the Lender's lockbox accounts, and (vii) a determination that the "equities of the case" exception in Section 552(b) will not apply to the Lender with respect to the proceeds, product, offspring or profits of the collateral. |
| **Final DIP Financing Order** | Prior to providing any funding in excess of $600,000, Lender will require that the Bankruptcy Court enter an order (the "Final DIP Financing Order" approving the financing contemplated by this term sheet on a final basis, following proper notice to all affected parties and as otherwise required under the Bankruptcy Code, that reaffirms all provisions of the Interim DIP Financing Order. |
| **Collections**: | Borrower shall establish at least one Commercial Lockbox Account and, if necessary, a Government Lockbox Account with a lockbox bank, that in each case is satisfactory to Lender in its sole discretion. Borrower shall instruct all account debtors (other than government account debtors) to remit collections directly to the address of a lockbox account assigned to and/or under the control of Lender (the "Commercial Lockbox Account").  Borrower shall instruct all government account debtors to remit Collections directly to the address of a lockbox account that is subject to a lockbox agreement that is satisfactory to Lender in its sole discretion (the "Government Lockbox Account").  Any collections received directly by Borrower must be deposited into the applicable Commercial Lockbox Account or the Government Lockbox Account within one business day of receipt. |
| **Covenants:** | The Bankruptcy Court shall have approved that certain letter of intent dated as of the date hereof that shall provide for the sale of the Borrower's hospital assets to PCH. |

4848-7109-6363, v. 2

                PCH as manager shall have exclusive control of the Borrower's hospital operations consistent with that certain Consulting Agreement (the "Consulting Agreement") dated December __, 2015 by and between Borrower and PCH.  The Consulting Agreement shall remain in full force and effect until a sale or dismissal occurs.

                Consistent with the Consulting Agreement, Borrower shall (i) provide PCH copies of bank deposit slips or receipts on a daily basis, (ii) provide PCH copies of all explanation of benefits on a daily basis, (iii) provide PCH with electronic (view only) access to all bank accounts, (iii) provide PCH daily notifications of all bank transfers (iv) not make any expenditure not set forth in the Budget, or issue any check over $500, without PCH's prior written approval; (v) hire any employees without PCH's prior written approval , (vi) require that its billing department report, and follow the instructions of,  PCH, and (vii) meet with PCH each Monday and Wednesday to review financial status and cash needs.

**Governing Law**:        United States Bankruptcy Court for the Northern District of Georgia.

By signing below, Borrower consents to our filing one or more Uniform Commercial Code financing statements against Borrower in any or all Uniform Commercial Code jurisdictions, which reflect the collateral.

By signing this letter, Borrower agrees to indemnify Lender, its managers, officers, and principals and hold each of them harmless against any and all losses, liabilities and claims arising out of or by reason of any investigation, litigation, or other proceeding brought or threatened relating in connection with the proposed financing, except for any such loss, liabilities or claims arising out of or relating to the gross negligence or unlawful conduct of LifeBrite, its agents or employees. No term set forth in this letter shall be amended, modified or waived except by an instrument in writing signed by LifeBrite.

Delivery of an executed signature page of this letter by facsimile transmission shall be effective as delivery of a manually executed counterpart thereof. If you are in agreement with the terms set forth in this letter, please sign in the space indicated by December 8, 2015.  If not signed by such date, this proposal shall expire on such date.

  Sincerely,                                    Accepted & agreed,

  **LifeBrite Management Inc**.         **Hutcheson Medical Center, Inc.**

  _____      By: _____
  Christian Fletcher                           Name:  Ron Glass
  Chief Executive Officer                   Title:   Chapter 11 Trustee

4848-7109-6363, v.  2

**People's Choice Hospital, LLC**

By: _____
Name: Dr. Seth Guterman
Title: President